IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF

             v.               No. 5:12-cr-50077

NICHOLAS HARPER                                             DEFENDANT


O R D E R

Now on this 21st day of May 2013, comes on for consideration the **Magistrate Judge's Report and Recommendation** (document #20) and defendant's objections thereto. The Court, being well and sufficiently advised, finds and orders as follows:

1.   On March 4, 2013, defendant Nicholas Harper filed a Motion to Suppress (document #13), arguing that the police lacked either probable cause or reasonable suspicion to stop Mr. Harper's truck and, thus, all evidence obtained as a result of the stop must be suppressed.

2.   The Court referred the motion to Magistrate Judge Erin L. Setser. After a three-day hearing, Judge Setser entered her Report and Recommendation, recommending that the motion be denied. Mr. Harper objected to the Magistrate Judge's conclusions.

3.   The Report and Recommendation included a detailed account of the evidence and testimony introduced during the hearing. As Mr. Harper has not objected to those facts, they will be adopted as if set out word for word herein.

4.   Mr. Harper makes only three objections. First he argues

that the officer who stopped his vehicle lacked sufficient information from the other task-force members to invoke the collective-knowledge doctrine. Therefore, Mr. Harper contends there was no probable cause for the stop.

Second, Mr. Harper argues that the officer lacked reasonable suspicion to conduct the stop for the same reasons as stated in his first objection.

Third, Mr. Harper disputes that he gave his consent for the search of his vehicle, arguing that certain testimony regarding consent was not credible.

5.   The basis for Mr. Harper's first and second objections is that the collective-knowledge doctrine is not applicable because the "degree of communication" between task-force members and Lieutenant Barbra Shrum, the officer who conducted the stop, was minimal.

> When multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting officer as long as there is some degree of communication.

**United States v. Robinson**, **664 F.3d 701, 703 (8th Cir. 2011).**

6.   Mr. Harper's contention that the degree of communication was minimal is based on Lt. Shrum's testimony that, prior to stop, she received information from Detective Travis Monson, who was "getting little tidbits" of information "every now and then." According to Mr. Harper, this was insufficient to impute the

knowledge of the rest of the team to Lt. Shrum before she conducted the stop.

7.   It is undisputed that there was an active, outstanding warrant for Mr. Harper at the time of the traffic stop. This by itself is enough to constitute probable cause, assuming the officer conducting the stop knew about the warrant, either personally or through the collective knowledge of her team. **See United States v. Kent**, 531 F.3d 642, 650 (8th Cir. 2008); **United States v. Gonzales**, 220 F.3d 922, 925 (8th Cir. 2000).

Based on the testimony of Special Agent Scott L. Crawford -- who led the task force -- it is clear that Agent Crawford was aware of the warrant at the time he instructed Det. Monson to stop Mr. Harper's truck. Det. Monson and Lt. Shrum both testified that they were together when Det. Monson received this instruction, and Lt. Shrum testified that she proceeded to stop Mr. Harper's vehicle based on the instruction relayed from Agent Crawford. Lt. Shrum further testified that she was aware of the warrant at the time she made the stop, although she did not know the details.

These facts indicate that Lt. Shrum was a part of the task-force team and that she acted as a part of that team -- and at the direction of the team leader -- when she stopped Mr. Harper's truck. Thus, the collective knowledge of the team can fairly be imputed to her, and that collective knowledge supports a finding of probable cause based on the outstanding warrant for Mr.

-3-

Harper's arrest. Therefore, Mr. Harper's first objection will be overruled.

8.   Mr. Harper's second objection is based on the same argument as his first objection. He contends that Lt. Shrum's degree of communication with the other task-force members was insufficient to impute their knowledge to her to support a finding of reasonable suspicion. In light of the foregoing, this objection will likewise be overruled.

9.   Finally, Mr. Harper disputes the credibility of Det. Monson's testimony that he twice asked for and received Mr. Harper's consent to search his truck during the traffic stop. Specifically, Mr. Harper disagrees that Det. Monson's past experience impressed upon him the importance of asking the proper questions to obtain consent to search. To the contrary, Mr. Harper contends that such experience should have impressed upon Det. Monson the importance of obtaining a signed consent form, which Det. Monson did not do.

10.   Det. Monson testified that, during the traffic stop, he asked Mr. Harper for consent to search the truck and informed him that he did not have to consent. **Transcript, pp. 83–84.** He stated that Mr. Harper acknowledged his right to refuse consent but nevertheless consented. **Transcript, p. 84.** After a search of the cab of the truck, Det. Monson asked if he could search the tool box, to which Mr. Harper again agreed. **_Id._**

-4-

Det. Monson testified that he did not have any consent forms with him during the stop because he had arrived in another officer's vehicle, but that he "went with what [he] had" and asked the standard questions for obtaining consent. **Transcript, pp. 85–86, 115.** He further testified that he asked for Mr. Harper's consent because it was required by the law and because he had been trained to do so. **Transcript, p. 315.** He stated that he knew that failing to advise a defendant of his right to refuse consent would jeopardize the whole case because it would result in suppression of any evidence found. **Id.**

11.  Contrary to Det. Monson's testimony, Mr. Harper testified that no one asked him for permission to search his truck. **Transcript, pp. 267–68.** He stated that he assumed the search was connected to the arrest warrant, and also that he felt intimidated because he was surrounded by law enforcement officers. **Transcript, pp. 267, 286.** According to his testimony, Mr. Harper did not protest against the search of his truck.

12.  The crux of Mr. Harper's objection is that Det. Monson should have known the importance of obtaining written consent to search, and because he did not obtain written consent, the Court should disbelieve Det. Monson's testimony that he obtained oral consent.

However, Mr. Harper does not dispute that a search may be justified by voluntary oral consent in the absence of written

-5-

consent. **United States v. Chaidez**, **906 F.2d 377, 382 (8th Cir. 1990).** As the testimony indicates, the only reason Det. Monson did not obtain written consent was because he did not have any consent forms available at the time of the stop. In the Court's view, this does not lessen the credibility of Det. Monson's testimony that he "went with what [he] had" by obtaining oral consent.

The Court finds that Mr. Harper gave voluntary consent to the search of his truck, and therefore, his objection will be overruled.

**IT IS THEREFORE ORDERED** that the **Magistrate Judge's Report and Recommendation** (document #20) is hereby **adopted** *in toto*, and defendant's objections are **overruled;**

**IT IS FURTHER ORDERED** that, for the reasons stated in the Report and Recommendation and herein, defendant's **Motion to Suppress** (document #13) is **denied.**

**IT IS SO ORDERED.**

 /s/ Jimm Larry Hendren
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**